87 F.3d 1323
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Quincy EARLY, Defendant-Appellant.
 No. 94-10543.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 11, 1996.*
Decided June 18, 1996.
 
 1
 Before: HALL, BRUNETTI, Circuit Judges, and WEINER, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 Quincy Early was convicted of aggravated sexual assault, 18 U.S.C. § 2241(a)(1), and subsequently pled guilty to assault resulting in bodily injury, 18 U.S.C. § 113(f); the convictions arose from a rape on the San Carlos Indian Reservation. Although Early's prior criminal history placed him in Criminal History Category II, the sentencing court followed the recommendation in the Presentence Report and departed upward on the ground that Category II did not adequately reflect Early's previous arrests and tribal convictions of assault. It ruled that Early's history of violent assaults warranted placing him in Category VI and thereafter imposed the maximum sentence allowed for defendants of Early's offense level having a Category VI history. In this appeal of his sentence, Early argues (1) that the district court lacked legal authority to depart upward; and (2) that the district court did not adequately justify the extent of its departure. We affirm.
 
 I.
 
 4
 Early first argues that the district court could not legally depart upward on the basis of his previous tribal court convictions of assault.[1] Upward departures are permitted only if "the court finds that there exist aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). These "circumstances" must be "consistent with the sentencing factors prescribed by Congress in 18 U.S.C. § 3553(a), with the Guidelines, and with the Constitution." Lira-Barraza, 941 F.2d at 746.
 
 
 5
 Early contends that the district court's departure is inconsistent with Sentencing Guideline 4A1.2(i). Guideline 4A1.2(i), however, only forbids the use of tribal convictions to calculate a defendant's Criminal History Category--it specifically permits these convictions to be used under Guideline 4A1.3 as a basis to depart upward. See U.S.S.G. § 4A1.2(i) ("Sentences resulting from tribal court convictions are not counted, but may be considered under § 4A1.3."); U.S.S.G. § 4A1.3 (authorizing upward departures "when the criminal history category [mandated by the Guidelines] significantly under-represents the seriousness of the defendant's criminal history or the likelihood he will commit further crimes."). Because the district court used Early's tribal convictions only to depart upward under Guideline 4A1.3 and not to calculate his Criminal History Category, the court's departure was legally sound.
 
 
 6
 Early also argues that the district court's departure was inconsistent with the Sixth Amendment. In Scott v. Illinois, 440 U.S. 367 (1979), the Supreme Court held that a defendant charged with a misdemeanor had no Sixth Amendment right to counsel unless his conviction resulted in imprisonment. Whether an uncounseled misdemeanor conviction could later be used as a basis for sentence enhancement remained an open question. In Nichols v. United States, 114 S.Ct. 1921 (1994), the Supreme Court answered this question and held that "an uncounseled misdemeanor conviction, valid under Scott because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction." Id. at 1928.[2]
 
 
 7
 Early claims that the district court, in violation of Nichols, used his uncounseled misdemeanor tribal convictions of assault to enhance his sentence. The lower court, in departing upward, did rely on the Presentence Report, which documented Early's involvement in "no less than ten assaults ... two of which involved using a knife on the victim." While the report did not indicate whether Early was provided counsel, it clearly stated that at least one of the assaults resulted in imprisonment.[3] As such, the use of at least one of these convictions--and perhaps the others--to enhance Early's sentence would seem to violate Nichols.
 
 
 8
 In defense of the district court's sentence, the government argues that the court never ran afoul of Nichols because it never relied on Early's tribal convictions--it instead relied on the conduct underlying those convictions. In the past, we have in this context drawn a distinction between a conviction and its underlying conduct. See Brady, 928 F.2d at 854 n. 17 ("This is not a case where the sentencing court considered the conduct underlying the prior convictions in determining whether the departure from the Guidelines was warranted."); accord Nichols, 114 S.Ct. at 1928 ("Consistently with due process, [a defendant] could have been sentenced more severely based simply on evidence of the underlying conduct which gave rise to the previous [conviction]."). Because the district court's discussion mentions only Early's assaultive conduct and places absolutely no emphasis on his convictions for that conduct, we believe that the lower court relied solely on Early's conduct in departing upward--it did not violate Nichols. We therefore find that the district court possessed legal authority to depart upward.
 
 III.
 
 9
 Early next argues that his sentence is invalid because the district court did not adequately explain the extent of its departure. When departing upward, "[t]he district court must explain the reasoning for both the direction and degree of its departure in sufficiently specific language to allow us to conduct a meaningful review." United States v. Streit, 962 F.2d 894, 902 (9th Cir.), cert. denied, 506 U.S. 962 (1992) (emphasis added); United States v. Wells, 878 F.2d 1232, 1233 (9th Cir.1989). When, as in this case, "a district court departs upward on the ground that a defendant's criminal history category under-represents the defendant's past criminal conduct, the degree of departure must be guided by analogy to higher criminal history categories." Streit, 962 F.2d at 905.
 
 
 10
 While "the court should [ordinarily] determine whether a defendant's actual criminal history most closely resembles the next higher criminal history category" before analogizing to an even higher category, see United States v. Starr, 971 F.2d 357, 363 (9th Cir.1992), this determination need not be expressly stated. In Starr, the sentencing court was precluded by the Guidelines from including the defendant's prior convictions of embezzlement and possession of stolen property in its initial criminal history calculation because they were too remote in time; as a result, the defendant fell into Category II. The court nevertheless departed upward and treated the defendant as if he had a Category IV history, but never explained why Category III was inadequate. We affirmed and observed that the defendant would have been placed in Category IV if the two remote convictions had been included in the initial calculation. We found that the lower court had "implicitly" reached the same conclusion and chosen Category IV on that basis. Id. at 363.
 
 
 11
 We believe that the district court in this case treated Early as having a Category VI history because he would have been placed in that category if his tribal convictions had been included in his initial criminal history calculation.[4] Because we, like the Starr court, are able to determine the district court's "implicit" reasoning, we are able to conduct a "meaningful review" of Early's sentence.[5]
 
 IV.
 
 12
 For the foregoing reasons, we AFFIRM Early's sentence.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34.4
 
 
 **
 The Honorable Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This argument is subject to our de novo review. See United States v. Lira-Barraza, 941 F.2d 745, 746-47 (9th Cir.1991) (en banc) (reviewing authority to depart under de novo standard)
 
 
 [2]
 A fragmented majority of the Court, in Baldasar v. Illinois, 446 U.S. 222 (1980), had reached a different answer--that no uncounseled misdemeanor conviction (whether or not it resulted in imprisonment) could be used to convert a later misdemeanor into a felony. In Nichols, the Court overruled this aspect of Baldasar. Nichols, 114 S.Ct. at 1928. United States v. Brady, 928 F.2d 844 (9th Cir.1991), relied on Baldasar and is overruled to the extent its reliance conflicts with the rule set forth in Nichols
 
 
 [3]
 We are unable to determine the sentences imposed for the other charges. The presentence report indicates that Early was charged with assault 11 times. While his September 5, 1989, charge resulted in imprisonment, his November 4, 1988, charge resulted in "90 Days Daily Report," and his September 16, 1987 and March 11, 1990 charges were dismissed and withdrawn, it is unclear whether Early was imprisoned or just fined for the remaining seven assaults--on March 22, 1980, April 14, 1986, July 12, 1987, September 9, 1987, October 14, 1987, March 29, 1989, and February 21, 1991
 
 
 [4]
 Defendants placed in Criminal History Category VI have at least 13 criminal history points. Early would have had 13 points, calculated as follows:
 
 
 [1]
 October 1981 manslaughter conviction (under U.S.S.G. § 4A1.1(a)): 3 points
 
 
 [2]
 September 1989 imprisonment of "at least 60 days" (under U.S.S.G. § 4A1.1(b)): 2 points
 
 
 [3]
 March 1980, April 1986, July 1987, September 9, 1987, October 1987, November 1988, March 1989, and February 1991 sentences "not counted in [4A1.1](a) or (b)" (under U.S.S.G. § 4A1.1(c)): 1 point * 8 = 8 points
 Note: We may disregard the 4 point limit under § 4A1.1(c) because we are departing upward. See U.S.S.G. § 4A1.3 (counting tribal convictions when departing upward, although such convictions are not properly included in criminal history calculation); Starr, 971 F.2d at 363 (same, with remote convictions).
 
 
 [5]
 The other cases cited by Early are not to the contrary because the sentencing courts in those cases left us no basis upon which to conduct a "meaningful review." See United States v. Gayou, 901 F.2d 746, 747, 749-50 (9th Cir.1990) (remanding where district court said only "[t]he computation in the guidelines ... does [not] adequately reflect[ ] the defendant's criminal behavior" and where the court never specified the prior crimes upon which the departure was based); Wells, 878 F.2d at 1233 (remanding because the district court said only "the defendant's criminal history category significantly underrepresents the seriousness of the defendant's criminal history"); Streit, 962 F.2d at 905 (remanding because the district court never specified which past crimes it was considering). But see United States v. Richison, 901 F.2d 778, 781 (9th Cir.1990) (noting only in dicta that the district court's treatment of a Category I defendant as if he were in Category IV without explaining why Categories II and III were inadequate would be grounds for remand)